**Marvin C. WELLS, Appellant,**

v.

**J. E. BUSH et ux., Appellees.**

No. 7006.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 4, 1958.

Rehearing Denied March 4, 1958.

Second Motion for Rehearing Denied March 25, 1958.

Morris I. Jaffe, Jay S. Fichtner, Dallas, for appellant.

Chaney & Harless, Dallas, for appellees.

DAVIS, Justice.

Plaintiff-appellant Marvin C. Wells sued defendants-appellees J. E. Bush and Dorothy McCarty Bush for a commission allegedly due upon a contract for the sale of real estate in Dallas County. The case was tried to the court without a jury, and from a judgment of the trial court that the plaintiff take nothing, Wells has appealed. (The case was transferred to this Court by the Supreme Court on an order of equalization of the dockets.)

The contract sued upon is as follows:

"The State of Texas
County of Dallas } By This Agreement and Contract

"Parties:
"Ed Gottlich et al, hereinafter called Seller, acting through the undersigned and duly authorized Agent, hereby sells and agrees to convey unto

"Dorothy McCarty Bush, out of her, hereinafter called Purchaser, individual property and estate

"Properties:
the following described property: Lying and situated in Dallas County, Texas, and Being 201 Acres of Land, more or less, a part of the Jos Foreman Survey, Abstract No. 483, and J. E. Field Survey, Abstract No. 1622, There Being 176.85 Acres in the Jos Foreman Survey and 24.25 Acres in J. E. Field Survey. The total acreage includes 12 acres South of New Highway 80. All acreage net and excluding roads & Highways.
The purchase price being Five Hundred Dollars, ($500.00), per acre, whether there be more or less, Seller agrees to sell for and accept Five Hundred Dollars, ($500.00), per acre and Purchaser agrees to pay said amount.
Seller Agrees to Furnish Survey.
All improvements included in this sale.

the purchase price is $500.00 per acre, or $100,500.00, based on 201 A., payable as follows:

$25,500.00 Cash (of which Purchaser has deposited with the undersigned Agent $10,050.00 as part payment, receipt of which is hereby acknowledged by said Agent):

"Terms:
The balance of the cash payment to be made at closing, And, the further execution of one First Vendor's Lien Note in the amount of Seventy Five Thousand Dollars, ($75,000.00), based on the number, or amount, of acres in said tract, Said note bearing interest at the rate of 4% per annum, and due and payable in five annual installments of Fifteen Thousand Dollars, ($15,000.00), on the principal. Interest payable annually as it accrues. Said note to provide for full on or before privileges to Purchaser.

The said executed note to be secured by Vendor's Lien and Deed of Trust with power of sale and with the usual covenants as to taxes, insurance, and default.

"Seller agrees to furnish Title Policy to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein.

"Title:    "If abstract is furnished, Purchaser agrees, within ten days from the receipt of said abstract either to accept the title as shown by said abstract or to return it to the undersigned Agent with the written objections to the title. If said abstract is not returned to the Agent with the written objections noted within the time specified, it shall be construed as an acceptance of said title. If title policy is furnished, Purchaser agrees to consummate the sale within ten days from date title company approves title.

"If any title objections are made, then the Seller or his Agent shall have a reasonable time to cure said objections and show good and marketable title. In the event of failure to furnish good and marketable title, the purchase money hereby receipted for is to be returned to Purchaser upon the cancellation and return of this contract, or Purchaser may enforce specific performance of same.

"Closing:    "Seller agrees when the title objections have been cured, to deliver a good and sufficient General Warranty Deed properly conveying said property to said Purchaser, and Purchaser agrees, when said deed is presented, to pay the balance of the cash payment and execute the note and Deed of Trust herein provided for. Should the Purchaser fail to consummate this contract as specified for any reason, except title defects, Seller shall have the right to retain said cash deposits as liquidated damages for the breach of this contract, and shall pay to Agent therefrom the sum of $5,025.00 or Seller may enforce specific performance of this contract.

"Taxes:    "Taxes for the current year, and current rents, insurance, and interest, (if any), are to be prorated to date of closing.
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx.
xxxxxxxxxxxxxxxxxxxxx

"Special Conditions:    Seller is not to pay Agent's commission for negotiating this contract except as set out herein. Purchaser Agrees To Pay Said Agent's Commission. Either party failing and refusing to comply with the terms of this agreement shall pay the agent's commission Seller agrees to furnish any title information to said Title Co. upon request by Agent or Title Company, and each of the parties agree to consummate this contract on or before thirty days from this date.

"Executed in triplicate this 3rd day of October    1952.

"This contract subject to the acceptance of Seller

Accepted:

/s/ Ed Gottlich                              Alliene Brandon Webb.
_____
            Seller
/s/ Dorothy McCarty Bush          By /s/ Marvin C. Wells
_____
         Purchaser.
                                                  Agent for ———————————
/s/ J. E. Bush"

Briefly, the history of the contract and lawsuit is as follows:

Alliene Brandon Webb was a sub-agent for Marvin C. Wells, a licensed real estate dealer. Mrs. Webb secured a listing of the property described in the contract from Ed Gottlich. (We note here that this listing was never offered in evidence, which listing would be necessary to show the agent's right to commission under the provisions of Vernon's Ann.Civ.St. Article 6573a, Sec. 28, formerly Sec. 22; Sec. 22 being in force and effect upon the date of the execution of the foregoing contract.) Wells alleged that he, not Mrs. Webb, secured the execution of the foregoing contract between Gottlich and the Bushes, and that Mrs. Webb made an oral assignment of her interest in the contract to Wells. As found by the trial court, the assignment was not proved.

Ed Gottlich was not the sole owner of the property referred to in the Gottlich-Bush contract (there is no showing who, as owner or owners of the property, signed the Listing Agreement with Mrs. Webb); yet, Ed Gottlich is the only one who signed the sales contract. After the execution of the sales contract, Wells secured the execution of a deed to the property from Ed Gottlich and the other parties who owned this land, conveying the property to Dorothy McCarty Bush. There was considerable delay in acceptance of the deed or in completion of the contract by the Bushes, and during that period of delay another purchaser for the property was found by appellant. At the time the subsequent purchaser was found, the Bushes had not declined to accept the deed and purchase the property. In order to make a sale of the property to the subsequent purchaser, the following instrument was executed:

"Dallas Title & Guaranty Company
"Dallas, Texas.

"Dallas, Texas, April 1st, 1953.

"Gentlemen:

"This is to advise you that that certain contract dated Oct. 3, 1952, executed by and between Ed Gottlich as Seller, and Dorothy McCarty Bush et vir, J. E. Bush, covering property in Surveys Nos. 483 and 1622 in Dallas County, Texas, has been cancelled, and you are hereby authorized to return to the Purchaser, Mrs. Dorothy McCarty Bush, her earnest money check in the amount of $10,050.00.

"This is done without prejudice to the rights of Marvin Wells, to sue for commission under the terms of said contract.

"/s/ Dorothy McCarty Bush
_____
"Dorothy McCarty Bush

"/s/ J. E. Bush
_____
"J. E. Bush

"/s/ Ed Gottlich
_____
"Ed Gottlich

"/s/ Marvin Wells, Realtor
_____
"Agent."

Upon execution of the above release or cancellation agreement, the $10,050 was returned to Mrs. Bush. Wells then sold the property to the other purchaser and was paid a commission for the sale.

 Appellant brings forward 10 points of error complaining of various actions of the trial court. These points are all challenged by appellees and their second counter-point settles all the issues involved in the suit. In their second counter-point, appellees take the position that the contract in question is not a sufficient contract in writing upon which an action may be brought by appellant for the recovery of a real estate commission under the laws of the State of Texas. Although appellant contends his suit is one for liquidated damages, it will be noted in the cancellation agreement above set out that all the provisions of the sales contract were cancelled, including the liquidated damages provision and the funds deposited for the payment of liquidated damages was returned. Appellant agreed to the cancellation agreement. The appellant by agreeing to that release and not reserving the right to sue for liquidated damages, waived his claim, if any he had, for liquidated damages under the sales contract. The Special Conditions set out in the sales contract are ambiguous and there is no specific provision for the payment of any specific sum as a commission under the sales contract. The writing sued upon in this case is not sufficient to comply with Article 6573a, Sec. 22, V.A.T. C.S.; Buratti & Montandon v. Tennant, 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R. 2d 742.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellants have filed an able motion for rehearing and insist most forcefully that our opinion in this case is in conflict with the case of Moorman v. Harris, Tex.Civ. App., 217 S.W.2d 182, no writ history. Our opinion in this case is readily distinquishable from that in Moorman v. Harris. In the Moorman case, the plaintiff sued for "earnest" money that had actually been forfeited. In the case at bar, the contract of sale and earnest money were released, and the appellant agreed to the release. In the release, appellant did not reserve the right to sue for the "earnest" money, neither does he contend that the earnest money was forfeited. He reserved the right to sue for a "commission." He proved no contract for a commission. In fact, he contended that his right to sue for a commission stemmed from a contract between two other people, neither of whom is a party to this suit. The contract which appellant contends was orally assigned to him was not proved, and we have no way of knowing what was in it. Under the record in this case, there is no provision of law whatever that would authorize a recovery by appellant.

The motion for rehearing is overruled.